Michael P. West, Esq. (SBN 172478)
Ashley A. Escudero, Esq. (SBN 250473)
**CLARK HILL LLP**
600 West Broadway, Suite 500
San Diego, California 92101
Telephone: (619) 557-0404
Facsimile: (619) 557-0460
mwest@clarkhill.com
aescudero@clarkhill.com

*Attorneys for Defendants,*
Welltower OpCo Group LLC and
Sunrise Senior Living Management, Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| | |
|---|---|
| GILBERT GARCIA, by and through his Successor in Interest, Paul Garcia; PAUL GARCIA individually; RONALD GARCIA, individually; GARY GARCIA, individually,<br><br>Plaintiffs,<br><br>v.<br><br>WELLTOWER OPCO GROUP LLC dba SUNRISE VILLA BRADFORD; SUNRISE SENIOR LIVING MANAGEMENT, INC.; and DOES 1 through 100,<br><br>Defendants. | Case No.<br><br>**NOTICE OF REMOVAL OF CIVIL ACTION**<br><br>[Re: Orange County Superior Court Case No. 30-20-01167237-CU-PO-CJC] |

COME NOW, Defendants SUNRISE SENIOR LIVING MANAGEMENT, INC., and WELLTOWER OPCO GROUP, LLC, by and through their undersigned counsel,

1

hereby remove this action from the Superior Court of the State of California, County of Orange, to the United States District Court for the Central District of California, Southern Division, reserving all defenses and reserving all objections to venue based on 42 U.S.C.A. § 247d-6d(e)(1), pursuant to 28 U.S.C.A. §§ 1441 and 1446, on the following grounds:

## I.   STATEMENT OF THE CASE

1. This action was filed in the Superior Court of the County of Orange, California as Case No. 30-2020-01167237-CU-PO-CJC on October 26, 2020. (**Exhibit A**, Summons and Complaint).

2. Defendant Sunrise Senior Living Management, Inc. was served with the Summons and Complaint on October 29, 2020.  Defendant Welltower Opco Group, LLC was served with the Summons on October 30, 2020.  Accordingly, this Notice of Removal is timely. *See* 28 U.S.C.A. § 1446(b).

3. The Complaint asserts causes of action for alleged elder abuse and neglect, wrongful death, and intentional infliction of emotional distress resulting from alleged misconduct by a covered person in the administration of a covered countermeasure under the Public Readiness and Emergency Preparedness Act ("PREP Act"), 42 U.S.C.A. §§ 247d-6d(d), 247d-6e (West 2020).

4. More specifically, Plaintiffs claim that Defendants engaged in negligent, willful and/or reckless conduct in the care rendered to the decedent in relation to

exposure, diagnosis, and treatment of COVID-19 and in the distribution, administration, or use of medical countermeasures, like COVID-19 testing and personal protective equipment, to prevent the spread of COVID-19 within the residential care facility for the elderly known as Sunrise Villa Bradford, where the decedent resided.

5. The Complaint seeks damages including compensation for pre-death pain and suffering pursuant to Welfare and Institutions Code section 15657, general damages, special damages, attorney's fees, punitive and exemplary damages. *See,* Ex. A, Compl. Prayer for Relief.

## II.    PROCEDURAL REQUIREMENTS

6. This notice is filed on behalf Defendants in the above-styled case pursuant to 28 U.S.C.A. § 1446(b)(2)(A).

7. Concurrent with the filing of this Notice or promptly thereafter, Defendants are serving this Notice of Removal on all other parties pursuant to 28 U.S.C.A. § 1446(d).

8. Pursuant to 28 U.S.C.A. § 1446(a), copies of pleadings and documents from the Superior Court for the County of Orange served upon or provided to Defendants are attached as follows:

| Exhibit | Date of Filing | Description |
|---|---|---|
| A | October 26, 2020 | Summons and Complaint (SSLMI) |

| B | October 26, 2020 | Summons and Complaint (Welltower Opco) |

## III.  ARGUMENT AND CITATION TO AUTHORITY

**A. Diversity Jurisdiction Under 28 U.S.C.A. § 1441(b) and 28 U.S.C.A. § 1332(a)**

9.  This case is removable under 28 U.S.C.A. § 1441(b) and 28 U.S.C.A. § 1332(a) on the basis of diversity jurisdiction because the parties are citizens of different States and the amount in controversy exceeds the sum or value of $75,000 exclusive of interest and costs.

10.  Upon information and belief, all of the Plaintiffs - Ronald Garcia, Paul Garcia, Gary Garcia, and decedent Gilbert Garcia (before his death) - are citizens of the State of California.

11. Defendant Sunrise Senior Living Management, Inc. is a corporation formed under the laws of the Commonwealth of Virginia with its principal place of business located in McLean, Virginia.

12. Defendant Welltower Opco Group, LLC is a limited liability company formed under the laws of the State of Delaware with its principal place of business located in Toledo, Ohio.  The sole member of Welltower Opco Group, LLC is Welltower TRS HoldCo., LLC, which is a limited liability company formed under the

laws of the State of Delaware with its principal place of business located in Toledo, Ohio. The sole member of Welltower TRS HoldCo., LLC is Welltower, Inc., which is a corporation formed under the laws of the State of Delaware with its principal place of business located in Toledo, Ohio.

13. The amount in controversy in this action exceeds $75,000. "The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability." *Lewis v. Verizon Comms., Inc.*, 627 F.3d 395, 400 (9th Cir. 2010). "To establish the jurisdictional amount, [Defendants] need not concede liability for the entire amount" Plaintiffs seek. *Id*. When determining the amount in controversy, courts should first look to the complaint. *See St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938). Where the complaint "does not specify a particular amount of damages, the removing defendant bears the burden of establishing, by a preponderance of the evidence, that the amount in controversy exceeds $[75,000]." *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996). The burden imposed by that standard "is not daunting, as courts recognize that … a removing defendant is *not* obligated to research, state, and prove the plaintiff's claims for damages." *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1204-05 (E.D. Cal. 2008) (emphasis in original) (internal quotations omitted). "The burden, rather, is to show what the plaintiff *hopes to get out of the litigation;* if this exceeds the jurisdictional amount, then the case proceeds in federal court unless a rule of law will keep the award

under the threshold." *Rising-Moore v. Red Roof Inns, Inc.,* 435 F. 3d 813, 816 (7th Cir. 2006) (emphasis added).

14. In this case, Plaintiffs plead three causes of action: Elder Abuse and Neglect, Wrongful Death, and Intentional Infliction of Emotional Distress. As described above, Plaintiffs contend that Defendants engaged in negligent, willful and/or reckless conduct in the care rendered to the decedent in relation to exposure, diagnosis, and treatment of COVID-19 and contends that, as a result, the decedent contracted COVID-19 and suffered from its symptoms including chills, fever, exhaustion, cough, and confusion such that he needed to be hospitalized. *See,* Ex. A, Compl. ¶¶ 39, 40, 42, and 43. Plaintiffs contend that the decedent remained in the hospital for 15 days before his passing and "suffered unjustifiable and substantial physical pain, mental suffering and indignity" as well as death. *See,* Ex. A, Compl. ¶¶ 42, 46, 47, 64, and 67. For these alleged injuries, Plaintiffs seek recovery in both compensatory and punitive damages. *See,* Ex. A, Compl. ¶¶ 64, 65, and Prayer for Relief. Moreover, Plaintiffs claim that, prior to the decedent's death, Plaintiffs "enjoyed the love, society, comfort and attention of their loving father" and that, "[a]s a proximate result of the acts and omissions by all the DEFENDANTS, alleged *supra*, [they] sustained the loss of love, society, comfort, and attention of their loving father" for which they seek general damages in addition to special damages including funeral and burial expenses. *See,* Ex. A, Compl. ¶¶ 73-75. Additionally, Plaintiffs claim that Defendants' purportedly wrongful conduct caused

Plaintiff Ronald Garcia to suffer severe emotional distress due to being exposed to a COVID-19 infected individual for which he purportedly has incurred and will continue to incur damages.  *See*, Ex. A, Compl. ¶¶ 77-82.

15. The Complaint seeks damages including but not limited to compensation for pre-death pain and suffering pursuant to Welfare and Institutions Code section 15657, general damages, special damages, attorney's fees, punitive damages, and exemplary damages.  *See,* Ex. A, Compl. Prayer for Relief.  Given the allegations raised by Plaintiffs in their Complaint as well as the type and extent of the damages Plaintiffs seek to recover, Defendants can in good faith estimate that the amount in controversy exceeds $75,000 by a preponderance of the evidence.  "*[A] good faith estimate of the stakes is acceptable* if it is plausible and supported by a preponderance of evidence." *Oshana v. Coca-Cola Co.,* 472 F.3d 506, 511 (7th Cir. 2006) (emphasis added).  *See also, Behrazfar v. Unisys Corp.*, 687 F. Supp. 2d 999, 1004 (C.D. Cal. 2009); *accord Stolz v. Safeco Ins. Co. of Am.*, 798 Fed. App'x 52, 54 (9th Cir. 2019); *Nasiri v. Allstate Indem. Co.*, 41 Fed. Appx. 76, 78 (9th Cir. 2002).  "In measuring the amount in controversy, a court must assume that the allegations of the complaint are true and that a jury will return a verdict for the plaintiff on all claims made in the complaint." *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008) (citing *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002)).

16. "Once the defendant in a removal case has established the requisite amount in controversy, the plaintiff can defeat jurisdiction only if it appears to a legal certainty that the claim is really for less than the jurisdictional amount." *Oshana v. Coca-Cola Co.,* 472 F.3d 506, 511 (7th Cir. 2006).

**B. Federal Question Jurisdiction Under 28 U.S.C.A. § 1441(a)**

17. In addition to and separate from diversity jurisdiction, this case is removable under 28 U.S.C.A. § 1441(a) on the basis of "original jurisdiction" because Plaintiffs' Complaint asserts a claim "arising under" federal law within the meaning of § 1331.

18. On its face, the allegations contained in the Complaint reflect that a "covered person" was involved in "recommended activity" relative to a "covered countermeasure" and therefore presents a federal question under the Public Readiness and Emergency Preparedness Act (PREP Act), 42 U.S.C.A. §§ 247d-6d, 247d-6e (West 2020).

19. As such, Congress provided an exclusive remedy for the substance of the allegations, and relief sought in the Complaint and Federal law expressly pre-empts state law for purposes of federal question jurisdiction. *See* PREP Act, 42 U.S.C.A. §§ 247d-6d, 247d-6e (West 2020).

20. The issue of whether federal question jurisdiction exists when a Complaint asserts a claim in state law is addressed in *Beneficial Nat. Bank v. Anderson*, 539 U.S. 1 (2003). The Court explained:

> [A] state claim may be removed to federal court … when a federal statute wholly displaces the state-law cause of action through **complete pre-emption**. When the federal statute completely pre-empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law. In the two categories of cases where this Court has found complete pre-emption … the federal statutes at issue **provided the exclusive cause of action** for the claim asserted and also **set forth procedures and remedies governing that cause of action**.

*Id.* at 8 (emphasis supplied; internal citations and footnotes omitted).

21. There, the plaintiff brought an action for usury under state law, which was preempted by the usury provisions of the National Bank Act (12 U.S.C.A. §§ 85 and 86). The Court held that the usury provisions under §§ 85 and 86 collectively "supersede both the substantive and the remedial provisions of state usury laws and create a federal remedy for overcharges that is exclusive." *Beneficial Nat. Bank, supra,* at 11. Therefore, the court held that federal question diversity was proper under the "complete preemption" doctrine.

22. Thus, Circuit Courts and District Courts have subsequently found "complete preemption" where a federal statute expressly preempts state law and creates an exclusive federal remedy for preempted state claims. *See, e.g., Fossen v. Blue Cross & Blue Shield of Montana, Inc.*, 660 F.3d 1102, 1107 (9th Cir. 2011); *In re WTC Disaster Site*, 414 F.3d 352, 380 (2d Cir. 2005); *Spear Marketing, Inc. v. Bancorp South Bank*,

791 F.3d 586 (5th Cir. 2015); *Nott v. Aetna U.S. Healthcare, Inc.*, 303 F.Supp.2d 565 (E.D.Pa. 2004).

23. Here, as set forth below, Defendants assert that Plaintiff's claims are completely preempted by the PREP Act sections found at 42 U.S.C.A. §§ 247d-6d and 247d-6e. *See Bruesewitz v. Wyeth LLC*, 562 U.S. 223, 253 (2011) (Sotomayor, J., dissenting) (The majority found that the National Childhood Vaccine Injury Act preempted state law. Justices Sotomayor and Ginsburg further analyzed that the PREP Act unequivocally demonstrated an intent to preempt state law through its use of "categorical (*e.g.*, 'all') and/or declarative language (*e.g.*, 'shall')" completely preempting state law).

24. Under 42 U.S.C.A. § 247d-6d(a), a "covered person" is afforded broad immunity for all "claims for loss arising out of, relating to, or resulting from" the "administration" or "use" of a "covered countermeasure" as those terms are defined by that section, provided the Secretary of the Department of Health and Human Services (HHS) issues a declaration to that effect.

25. For all claims barred by immunity under 42 U.S.C.A. § 247d-6d that do not assert "willful misconduct," the exclusive remedy for relief is established under § 247d-6e, which permits an individual to make a claim for benefits through the Countermeasures Injury Compensation Program, also known as the Fund, for a "covered injury directly caused by the administration or use of a covered

countermeasure." In fact, and for purposes of illustrating Congress's intent to address all claims, even a claimant alleging "willful misconduct" must first apply for benefits through the Fund under § 247d-6e before bringing an action under § 247d-6d(d). *Id*. § 247d-6e(d)(1). Further, even where a plaintiff has alleged willful misconduct and exhausted his remedies relative to the Fund, such plaintiff is limited to "*an exclusive Federal cause of action*" for willful misconduct "maintained only in the United States District Court for the District of Columbia." 42 U.S.C.A. § 247d-6d9(d)(1)-(e)(1) (emphasis added).

26. Moreover, under 42 U.S.C.A. § 247d-6d(b)(8), state law that "is different from, or in conflict with, any requirement applicable [for immunity]" is expressly preempted.

27. Therefore, Congress has clearly manifested the intent to preempt state law with respect to claims that invoke PREP Act immunity and to create an exclusive federal remedy for such preempted claims, thereby "completely preempting" state law for purposes of federal question jurisdiction. *See Bruesewitz*, 562 U.S. at 253 (Sotomayor, J., dissenting).

28. Here, as alleged in the Complaint, Defendants are "covered persons" in that Defendants' Facility, Sunrise Villa Bradford, is a residential care facility for the elderly licensed by the State of California. Further, Defendants' Facility, as well as its' employees and affiliates are "covered persons" because each meet the requirements of

a "program planner" of countermeasures under the PREP Act and are "qualified persons who prescribed, administered or dispensed" a countermeasure under the PREP Act. This was recently confirmed by the Office of the General Counsel, Secretary of the Department of Health and Human Services in an opinion letter dated August 14, 2020, stating that senior living communities, such as those operated by Defendants, are "covered persons," entitled to immunity under the PREP Act by virtue of their status as both "program planners" and "qualified persons."

29. Plaintiffs' claim for loss "arises out of, relates to, or results from" the administration and use of a "covered countermeasure" obtained through a "means of distribution," to a "population," and within a "geographic area," or reasonably believed so by Defendants, for the purpose of treating, diagnosing, curing, preventing, or mitigating COVID-19, or the transmission of SARS-CoV-2 or a virus mutating therefrom, as such terms are defined within the PREP Act, 42 U.S.C.A. §§ 247d-6d, 247d-6e (West 2020), the Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19, 85 Fed. Reg. 15198 (Mar. 17, 2020), *amended by* 85 Fed. Reg. 21012 (Apr. 15, 2020), and all corresponding amendments, regulations, and interpretational case law.

30. At the time of the allegations set forth in the Complaint, and based on such allegations, Defendants were acting as "program planners" that supervised the infection control policy program, under which FDA approved personal protective equipment

including, without limitation, N95 respirators, face shields, and gowns as well as diagnostic countermeasures were distributed and administered to the decedent and the staff of Sunrise Villa Bradford in an effort to diagnose, mitigate, and prevent COVID-19, or the transmission of SARS-CoV-2 or a virus mutating therefrom. Further, Defendants' employees and affiliates were acting as employees of a "program planner" that supervised and administered the infection control program that provided and used FDA approved countermeasures on the decedent and the staff of Sunrise Villa Bradford in an effort to diagnose and mitigate COVID-19, or the transmission of SARS-CoV-2 or a virus mutating therefrom.

31. At the time of the allegations set forth in the Complaint, and based on such allegations, Defendants' employees and affiliates were acting as "qualified persons" because Defendants' employees were authorized to administer, deliver, and use FDA covered countermeasures, like personal protective equipment and FDA approved COVID-19 devices, medication, and diagnostic tests to diagnose and prevent COVID-19, or the transmission of SARS-CoV-2 or a virus mutating therefrom.

32. At the time of the allegations set forth in the Complaint, and based on such allegations, Defendants were engaged in the management and operation of countermeasure programs in an effort to diagnose and prevent COVID-19, or the transmission of SARS-CoV-2 or a virus mutating therefrom to a "population" and within a "geographic area" specified by the Declaration Under the Public Readiness and

Emergency Preparedness Act for Medical Countermeasures Against COVID-19, 85 Fed. Reg. 15198 (Mar. 17, 2020), and all amendments thereto ("Declaration"), or reasonably believed so by Defendants. Likewise, Defendants' employees and affiliates were physically providing the countermeasures to the decedent and using the countermeasures in an effort to diagnose and prevent COVID-19, or the transmission of SARS-CoV-2 or a virus mutating therefrom to a "population" and within a "geographic area" specified by the Declaration, and all amendments thereto, or reasonably believed so by Defendants. In fact, HHS confirmed in letter dated August 31, 2020 that diagnostic testing for COVID-19 in senior living communities qualifies as a "covered countermeasure" triggering PREP Act immunity.

33. At the time of the allegations set forth in the Complaint, the respirators and face shields used by Defendants were approved by the FDA as a qualified pandemic or epidemic product and were respiratory protective devices approved by the National Institute for Occupational Safety and Health under 42 CFR part 84, and were administered, delivered, distributed, and dispensed in accordance with the public health and medical response of the State of California or reasonably believed so by Defendants, and Plaintiffs' claim for loss "arises out of, relates to, or results from" the administration and use of such "covered countermeasures."

34. Therefore, Plaintiffs' Complaint invokes a federal question for which the governing federal law "completely preempts" Plaintiffs' state law claims, and removal

is proper under 28 U.S.C.A. § 1441(a).

35. Finally, federal question jurisdiction also exists because there is a substantial, embedded question of federal law. *See Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005). In *Grable*, the Supreme Court set forth a two-step process for determining whether a state law claim "arises under" federal law. **First**, the state law claim must necessarily raise a stated federal issue, actually disputed and substantial. **Second**, federal courts must be able to entertain the state law claims "without disturbing a congressionally approved balance of state and federal judicial responsibilities." *Id*.

36. Here, the first prong is met because Plaintiffs' Petition alleges Defendants' ineffective use and administration of covered countermeasures in preventing the spread of COVID-19. By their nature, these allegations invoke a substantial federal question as to whether the broad immunities afforded under the PREP Act apply to the conduct of Defendants, and a federal court has a substantial interest in determining the application of the PREP Act given the widespread and pervasive nature of the COVID-19 pandemic.

37. The second prong is also met because this Court would not "disturb any congressionally approved balance of federal and state judicial responsibilities" retaining jurisdiction in this matter. On the contrary, the PREP Act expresses a clear intention to supersede and preempt state control of the very issues raised by Plaintiffs: "No State . . . may establish, enforce, or continue in effect with respect to a covered countermeasure

any provision of law or legal requirement that . . . (A) is different from, or is in conflict with, any requirement applicable under this section; and (B) relates to the . . . use, . . . dispensing, or administration by qualified persons of the covered countermeasure" 42 U.S.C. § 247d-6d [b] [8].  As such, this Court would not be disturbing or otherwise infringing on any balance of state and federal interest by retaining jurisdiction

**WHEREFORE**, having shown that this case is properly removable on the basis of diversity jurisdiction as well as federal question jurisdiction, Defendants provide notice pursuant to 28 U.S.C.A. § 1446 that the Action pending in Superior Court for the County of Orange, California, Case No. 20STCV25558, is removed to the United States District Court for the Central District of California, and respectfully request that this Court exercise jurisdiction over this case.

Respectfully submitted this 27th day of November, 2020.

        Respectfully submitted,

        **CLARK HILL LLP**

    By: /s/Michael P. West

    Michael P. West
    Ashley A. Escudero
    **CLARK HILL LLP**
    One America Plaza
    600 West Broadway, Suite 500
    San Diego, CA 92101
    Telephone: (619) 557-0404
    Facsimile: (619) 557-0460
    mwest@clarkhill.com
    aescudero@clarkhill.com
    *Attorneys for Defendants*
    Welltower OpCo Group LLC and
    Sunrise Senior Living Management, Inc.

DEFENDANTS SUNRISE SENIOR LIVING MANAGEMENT, INC., AND WELLTOWER
OPCO GROUP, LLC NOTICE OF REMOVAL

ClarkHill\61560\416158\261364759.v1-11/27/20

# CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of November, 2020, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system, which will then be sent Electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent by first class mail to any counsel of record indicated as non-registered participants.

Dated: November 27, 2020

/s/ Michael P. West
Michael P. West
*Attorneys for Defendants,*
Welltower OpCo Group, LLC
and Sunrise Senior Living
Management, Inc.

*Attorney for Plaintiffs:*

Ayman R. Mourad, Esq.
Alexander N. Rynerson, Esq.
**LANZONE MORGAN LLC**
5001 Airport Plaza Dr., Suite 210
Long Beach, CA  90815
Tel:  (562) 596-1700
Fax:  (562) 596-0011
Email: eservice@lanzonemorgan.com
Email: arm@lanzonemorgan.com
Email: asr@lanzonemorgan.com